IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| BRANCH BANKING & TRUST COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WCDM DEVELOPMENT, LP, J & S )<br>ACQUISITIONS, INC., FALL LINE )<br>EQUIPMENT CO., JERRY L. )<br>STEPHENS, )<br>)<br>Defendants. )<br>) | CIVIL ACTION NO. 5:11-CV-122 (MTT) |

## ORDER

This matter is before the Court on Defendants WCDM Development, LP, J & S Acquisitions, Inc., Fall Line Equipment Co., and Jerry L. Stephens' Motion to Dismiss (Doc. 19) and Plaintiff Branch Banking & Trust's ("BB&T") Motion for Summary Judgment (Doc. 24).  For the following reasons, the Motion to Dismiss is **GRANTED in part and DENIED in part** and the Motion for Summary Judgment is **GRANTED**.

### I.  FACTUAL BACKGROUND

This is a suit by BB&T on a note.  On April 2, 2001, WCDM, a limited partnership, executed and delivered a $1,000,000 note to Colonial Bank, N.A.  J & S is the general partner of WCDM and Stephens, his wife, and his two adult daughters are the limited partners.  WCDM and Colonial continued to extend the maturity date until March 27, 2007, when J & S, Fall Line, and Stephens executed written guarantees to induce Colonial to renew the Note.  The guarantees expressly state that the Guarantors are jointly and severally liable.  The Note, as modified, matured on April 5, 2009.

On August 14, 2009, BB&T became successor in interest to Colonial pursuant to a Purchase & Assumption Agreement.  The Defendants have not made any payments on the Note since August 2009.  On March 11, 2011, BB&T informed the Defendants that they were in default under the Note and demanded immediate payment in full.

Less than one month later, BB&T filed this action to recover on the Note.  The Defendants moved to dismiss for lack of diversity.  The Parties agree BB&T is a North Carolina citizen and WCDM, J & S, and Fall Line are Georgia citizens.  However, the Parties dispute whether Stephens is domiciled in Georgia or North Carolina.

Stephens, who testified at the hearing on the Motion to Dismiss, moved to North Carolina in 2007 to manage the day-to-day operations of Rosewood at Providence, LLC, of which WCDM is the sole member.  Stephens claims he intended to stay in North Carolina once he and his wife of forty years separated and commenced divorce proceedings in August 2009.  Stephens' argument that he is domiciled in North Carolina is primarily based on the fact that he has lived and worked there for years.  He keeps his belongings there, he leases a condominium there,[1] he regularly attends church there, he is a member of two North Carolina country clubs, and he drives a vehicle owned by WCDM that is registered in North Carolina.

---

[1] The Parties argue over whether Stephens' residential lease in North Carolina is a month to month lease or a year to year lease based on the fact that Stephens did not renew the one year lease he had on his North Carolina residence.  BB&T's point is that if Stephens thought his lease was month to month, he might be a little more mobile than if his lease was year to year. Apparently, Stephens is not sure what the status of his lease is.  In his deposition, he testified he had a month to month lease, but at the hearing testified that his lease was year to year.  It appears, by operation of North Carolina law, a year to year tenancy is created when a tenant holds over after a fixed term of one year or more.  *Fairway Outdoor Advertising v. Edwards,* 197 N.C. App. 650, 656, 678 S.E. 2d 765, 769 (2009).  The Court does not attach much significance to this either way.

BB&T primarily argues Stephens did not change his domicile because he still has a Georgia driver's license, is registered to vote in Georgia, files Georgia income taxes, has not obtained a North Carolina telephone number, maintains membership in a Georgia country club, and various other "objective factors." Further, BB&T highlights that Stephens' attorneys filed a pleading in the Rosewood bankruptcy action that stated Stephens was domiciled in Georgia after this action was filed.

BB&T moved for summary judgment on the basis that it is undisputed that it is entitled to judgment on the Note. BB&T also seeks attorney's fees pursuant to O.C.G.A. § 13-1-11.

The Defendants do not dispute that as of March 24, 2011, $749,932.64 in principal, $265,596.00 in interest, and $7,880.93 in fees were due on the Note.[2] However, the Defendants argue the Motion for Summary Judgment should be denied because BB&T has not proven it is the holder of the Note, BB&T has failed to mitigate damages, and awarding attorney's fees pursuant to § 13-1-11 would constitute a windfall because the statute is not limited to fees actually incurred.

## II. DISCUSSION

**A.    The Defendants' Motion to Dismiss**

The Federal Rules employ a notice pleading standard, which requires that the complaint contain "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). "When a court holds an evidentiary hearing on the question of diversity, the party asserting jurisdiction, in this case the Plaintiff, has to prove by a preponderance of the evidence that diversity exists. However, it is

---

[2] The interest was $375,660.78 at the time the Motion for Summary Judgment was filed.

incumbent upon the party asserting a change in domicile to prove that a change indeed occurred." *Duff v. Beaty*, 804 F. Supp. 332, 334 (N.D. Ga. 1992) (internal citations omitted).

Here, the Defendants allege Stephens changed his domicile to North Carolina, and thus there is no diversity of citizenship jurisdiction. "To show that his domicile has changed, Defendant must demonstrate (1) a physical residence in the 'new' state and, (2) an intent to stay in that 'new' state for an indefinite period of time. Defendant must show this change by a preponderance of the evidence." *Id.* at 335 (internal citations omitted).

> This intent can be proven by any number of objective factors, e.g. payment of taxes, procurement of driver's license, exercise of voting rights, moving of personal belongings, ownership or rental of property, location of family, place of employment, etc. Subjective comments and statements are to be given less weight when they conflict with objective facts. No single factor is of overriding importance and the court should examine the entire course of a person's conduct in determining domicile.

*Id.* (internal citations omitted).

While BB&T cites *Duff* for the law, the Defendants could have relied on *Duff* for its facts. Like here, the defendant in *Duff* was going through a separation. The defendant had not changed his driver's license, changed his car registration, registered to vote, or joined any civic clubs. Even though the "objective factors [were] strong on both sides of the issue," the court held the defendant had changed his domicile from Georgia to Tennessee. *Id.* at 337.

Here, based upon Stephens' entire course of conduct, the Court finds that Stephens is a domiciliary of North Carolina. Stephens has provided logical explanations for his "failure" to meet objective factors. Based on the advice of his accountant,

Stephens continues to file taxes in Georgia because he files jointly with his wife and his divorce has not been finalized. Stephens claims he has not renewed his license because it does not expire until 2016. He has not changed his voter registration because there has not been a presidential election since Stephens decided to remain in North Carolina permanently. He has kept his cell phone number because there is no reason to get a "North Carolina" number; he can use his "Georgia" number in North Carolina just as easily as he could use a North Carolina number.[3] Finally, there is no evidence Stephens informed his attorneys that he intended to remain domiciled in Georgia, and thus the filing in the bankruptcy action holds little weight.

The fairly unique facts of this case illustrate the potential of allowing the "objective factors test" to obscure the reality of a particular situation. Here, Stephens has been living in North Carolina since 2007. When he and his wife separated and sued for divorce in 2009, he elected to make North Carolina his permanent residence. Since then, he has worked full time in North Carolina, although he returns occasionally to Georgia to transact WCDM business. There is no evidence that the divorce proceeding is a sham or that he maintains any residence in Georgia. Given these facts, most people in the real world would not doubt that Stephens has moved to North Carolina and changed his domicile. If, on the other hand, Stephens and his wife were not divorcing or if he had only been in North Carolina for, say, six months, perhaps these "objective factors" would carry more weight. However, given that Stephens has reasonable explanations for each objective factor cited by BB&T, the Court is satisfied, as Judge Murphy was in *Duff,* that Stephens is a North Carolina domiciliary.

---

[3] Given the prevalent use of cell phones rather than "landlines," the telephone objective factor is now of doubtful significance.

Accordingly, because Stephens is a North Carolina domiciliary, there is a lack of diversity and Stephens must be dismissed without prejudice.

With regard to the remaining Defendants, there is no dispute that J & S and Fall Line are Georgia entities. Although the Parties agree WCDM is a Georgia limited partnership, the Court notes that as a limited partnership, WCDM is a citizen of any state in which its partners are a citizen. *Rolling Greens MHP, LP v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1021 (11th Cir. 2004). Thus, WCDM is a citizen of both Georgia and North Carolina and must be dismissed without prejudice.

Pursuant to Fed. R. Civ. P. 21, "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party." However, the nondiverse party must be dispensable. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832-38 (1989). *Newman-Green* specifically stated that because "guarantors … are jointly and severally liable, it cannot be argued that [the nondiverse party] was indispensable to the suit." *Id.* at 838. Here, the Defendants are jointly and severally liable,[4] and thus dismissing Stephens and WCDM would not prejudice the remaining Guarantors.

Accordingly, the Court chooses to retain jurisdiction over J & S and Fall Line, and the Motion to Dismiss is denied with regard to these Parties.

**B.    BB&T's Motion for Summary Judgment**

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to

---

[4] The guarantees expressly provide that the Guarantors are jointly and severally liable. This language is not necessary, as guarantors are "jointly and severally liable with their principal unless the contract provides otherwise." O.C.G.A. § 10-7-1.

any material facts and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). The burden rests with the moving party to prove that no genuine issue of material fact exists. *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d at 1224. The district court must "view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor." *Id.*

The Defendants argue they do not have to pay on the Note because BB&T is not the holder of the Note, BB&T has failed to mitigate damages, and BB&T is not entitled to attorney's fees pursuant to O.C.G.A. § 13-1-11. First, Judge Land of this District recently held that a Purchase & Assumption Agreement can be used as evidence of a valid transfer of assets. *Haynes v. JPMorgan Chase Bank, N.A.*, 2011 WL 2581956, at *6 (M.D. Ga.). The Defendants cite *Javaheri v. JPMorgan Chase Bank, N.A.*, 2011 WL 2173786, at *5 (C.D. Cal.) for the proposition that a Purchase & Assumption Agreement is not conclusive evidence of a transfer of assets. However, in *Javaheri*, there was a question whether Chase was the holder of the note because Washington Mutual transferred the note to Washington Mutual Mortgage Securities Corporation *before* the Purchase & Assumption Agreement between Chase and Washington Mutual. Here, unlike *Javaheri*, "[the Defendants] pointed the Court to no competent evidence to rebut these facts, and the Court concludes that the transfer from [Colonial] to [BB&T] was valid." *Haynes*, 2011 WL 2581956, at *6.

With regard to mitigation of damages, the Defendants argue there is a duty to mitigate damages where, as here, nonjudicial remedies are practicable.  The Defendants concede Georgia law is contrary to their position, but argue Georgia law has been improperly applied since *Reid v. Whisenant*, 161 Ga. 503, 131 S.E. 904 (1926) because that case overlooked the enactment of O.C.G.A. § 13-6-5, which is in derogation of the "absolute promise to pay" exception at common law.  The Defendants further support their practicability position by arguing that after the entry of judgment, BB&T will be limited to judicial remedies that are more expensive than nonjudicial remedies.  The Defendants rely upon O.C.G.A. § 44-14-210, which states that if a plaintiff's note is reduced to judgment, the plaintiff must execute a quitclaim conveyance to the defendant.  This transfer, the Defendants argue, would extinguish BB&T's ability to foreclose and, in the process, deprive the Defendants of certain safeguards afforded debtors in Georgia's nonjudicial foreclosure scheme.  However, the Defendants acknowledge that *Taylor v. Thompson*, 158 Ga. App. 671, 282 S.E.2d 157 (1981) held that creditors could exercise nonjudicial power of sale after the entry of judgment, but argue that court overlooked § 44-14-210.

The Court understands and appreciates the Defendants' arguments, but it cannot overlook 85 years of precedent that courts continue to apply.  *Branch Banking & Trust Co. v. Lichty Bros. Const., Inc.*, 2011 WL 883912, at *2-4 (N.D. Ga.); *Big Sandy Partnership, LLC v. Branch Banking & Trust Co.*, 2012 WL 283660, at *2 (Ga. App.); *REL Development, Inc. v. Branch Banking & Trust Co.*, 305 Ga. App. 429, 699 S.E.2d 779 (2010).  If longstanding Georgia law is to change, state appellate courts, and not this federal district court, are best suited for the job.

Finally, the Defendants have failed to cite any case holding that the Court may not award attorney's fees pursuant to O.C.G.A. § 13-1-11. While the Defendants may believe BB&T is only entitled to fees it actually incurred, § 13-1-11 clearly sets forth the procedure for determining attorney's fees based upon recovery on a note.

Accordingly, BB&T's Motion for Summary Judgment is granted.

### III.   CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part** and the Plaintiff's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED**, this 19th day of March, 2012.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
